James D. Holman, Esq. ISB #2547
Jacob S. Wessel, Esq. ISB #7529
THOMSEN STEPHENS LAW OFFICES, PLLC
2635 Channing Way
Idaho Falls, ID 83404
Telephone (208) 522-1230
Fax (208) 522-1277
jwessel@ts-lawoffice.com
holman@ts-lawoffice.com

Attorneys for Plaintiff Mario Velasco

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIO VELASCO,<br><br>Plaintiff,<br><br>v.<br><br>BROADWAY ARCTIC CIRCLE, LLC; and HITT ARCTIC CIRCLE, LLC,<br><br>Defendants. | Case No. CV-11-102-S-BLW<br><br>PLAINTIFF'S TRIAL MEMORANDUM<br>Dist. Idaho Loc. Civ. R. 16.3(b) |

Plaintiff hereby submits the following trial memorandum in accordance with the court's scheduling order and Dist. Idaho Loc. Civ. R. 16.3(b).

I. NATURE OF THE CASE

This is a claim for disability discrimination and retaliation under Title I of the Americans with Disabilities Act of 1990, Title I of the Civil Rights Act of 1991, and the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq*.

## II. STATEMENT OF FACTS

Mario Velasco was born with an organic brain disorder. The condition affects his memory, specifically his short term memory, and his ability to express himself orally and in writing. Velasco speaks slowly and stutters when he speaks. Although he has difficult writing, he is able to read. Velasco also has epilepsy and partial paralysis of the right side of his body. These conditions make it difficult for him to walk quickly or for long distances and prohibit him from driving. Defendants do not dispute that Velasco is disabled.

Velasco began working for Defendants' fast food restaurants in 2001. He initially performed maintenance duties, but his duties were increased over time to include cleaning fryers, unloading trucks and putting away shipments, cleaning tables, taking food to the customers, straightening up the lobby, and filling condiments. He was paid minimum wage for the work he did at Broadway Arctic Circle. He also unloaded shipments at Hitt Arctic Circle twice each week, for which David Bell (Defendants' owner) paid him $20.00 in cash per day. This was an ideal job for Velasco because the hours were perfect for him, and the work was close to his house. He was not looking for another job, and he planned to work there until he retired.

Defendants' owner, David Bell and Velasco's manager, Brenda Mata frequently harassed Velasco because of his disabilities. Although the harassment occurred on a daily basis, three incidences in the summer of 2009 illustrate what Velasco was dealing with.

First, on one occasion, Velasco tried to talk to Bell and Mata regarding his employment, and he was having trouble expressing himself. Ms. Mata remarked, "How long is it going to take you to get this out?" Mata and Bell then laughed at Velasco. Velasco perceived this as making fun of his speech.

Second, Mr. Bell was sitting with employees when Velasco picked up a newspaper to read. Mr. Bell asked, "Why do you bother? All you are doing is looking at the pictures." Bell said this in front of Velasco's coworkers who laughed as well as customers.

Third, Velasco frequently saw Bell making faces after Velasco left their conversations. Velasco was frequently left out of employee meetings when Bell would include all other employees in the meetings and tell Velasco that "this doesn't pertain to you."

On August 20, 2009, Velasco filed a charge of discrimination with the Idaho Human Rights Commission, alleging harassment. When Mr. Bell received a copy of the charge, he called Velasco to his office and, with a copy of the charge in his hand, stated, "Are you serious?" He then called Velasco a "selfish little punk." In the following days, Mr. Bell, supervisor Lita Cooper, and Manager Brenda Mata gave Velasco a written employee counseling for leaving his job duties. Velasco had never been reprimanded in the eight years that he worked for Defendants until he filed his charge of discrimination.

On August 24, 2009, Mata informed Velasco that his duty of cleaning the fryers was being taken away and that his hours were being reduced. On August 25, 2009, Velasco's duty of unloading trucks was taken away. On August 28, 2009, a schedule was posted, and Velasco was scheduled to work only two hours per day. Velasco's schedule at Broadway Arctic Circle had originally been Monday through Friday from 8:30 to 3:00. His hours were reduced to Monday through Friday from 10:00 to 3:00, with one day coming in at 8:30. At the time Velasco's employment ended, he was scheduled to work Monday through Friday from 11:00 to 1:00. His four hours working at Hitt Arctic Circle unloading trucks was also taken away. Velasco was forced to quit his job on August 31, 2009.

He filed an amended charge of discrimination alleging retaliation for filing his initial charge of discrimination with the IHRC.

Defendants do not dispute that they reduced Velasco's hours, but they allege that the reduction in hours was due to difficult economic times and that other employees' hours were also reduced. Although requested Defendants have not provided documentation through discovery proving this claim.

## III. ARGUMENT

### A. Harassment under the ADA

Title I of the ADA prohibits discrimination in employment, and provides employees with disabilities with broad protections in the workplace. The statute states: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *See* 42 U.S.C.§12112 (a)

Courts that have recognized a cause of action for disability harassment have focused on the similarities between this provision of the ADA and Title VII. Although harassment is not expressly prohibited in Title VII, the U.S. Supreme Court has recognized that harassment based on a protected status is implicitly prohibited by Title VII. Both Title I of the ADA and Title VII use the language "terms, conditions, and privileges of employment." Courts have interpreted this to be the relevant portion of the statutes from which to draw a harassment claim. The courts have established that, should conduct rise to a level that is severe and pervasive, and creates an abusive work environment

that interferes with an employee's ability to perform the job, it is a form of discrimination, because it affects the "terms and conditions" of that individual's employment.

Four federal circuit courts of appeal (Fourth, Fifth, Eighth and Tenth circuits) have ruled that disability harassment/hostile work environment claims are actionable under Title I of the ADA. The Ninth Circuit has presumed that the cause of action exists, but has not yet explicitly issued a ruling that a disability harassment claim is actionable under the ADA. Significantly, no federal court has ruled that a disability harassment claim is not actionable under Title I of the ADA.

*Roberts v. Dimension Aviation*, 319 F. Supp. 2d 985, 988 (D. Ariz. 2004) (*citing Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003), stated that "[t]he Ninth Circuit has not yet held that a hostile work environment/harassment claim is actionable under the ADA. However, several other circuits have recognized such a cause of action because of the similarity between the language of the ADA and Title VII. Each prohibits discrimination with regard to "other terms, conditions, and privileges of employment" and courts have concluded that because such language is the basis for a hostile work environment claim under Title VII, the same must be true under the ADA. *See Fox v. General Motors Corporation* 247 F.3d 169, 175 (4th Cir. 2001); *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229, 233 (5th Cir. 2001); *Shaver v. Independent Stave Company,* 350 F.3d 716, 719-20 (8th Cir. 2003)."

To succeed on a claim of disability-based harassment under the ADA, Plaintiff must prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcomed harassment; (3) harassment complained of was based on his disability or disabilities; (4) harassment complained of affected a term, condition or privilege of employment; and (5) employer knew or should have known of harassment and failed to take prompt, remedial action. *Flowers*, 247 F.3d at 235-36.

Defendants do not dispute that Velasco is disabled within the meaning the ADA, and even if they did, the only medical testimony as to this issue is the testimony of Velasco's treating physician that Velasco has a physical impairment (organic brain disorder, epilepsy, and partial paralysis) that substantially limits the major life activities of walking, talking, remembering, and driving. *See* 29 C.F.R. § 1630.2(g). In addition, Defendants regarded him as having a disability. He therefore belongs to a protected group of disabled individuals.

Velasco alleges that he was subjected to unwanted harassment based upon his disability by the owner of Defendants, David Bell, and by the manager of the Broadway store, Brenda Mata. Velaso alleges that this occurred on a daily basis and that it was severe, pervasive, and created an abusive work environment. He cites three specific instances, occurring in the weeks before he filed his charge of discrimination with the Idaho Human Rights Commission, to illustrate the working conditions that made it difficult for him to work for Defendants. This harassment was so severe that Velasco was forced to file a complaint with the Idaho Human Rights Commission.

B. Retaliation under the ADA

The ADA prohibits an employer from discriminating against a qualified individual on the basis of disability. §12112(a). It also prohibits an employer from retaliating "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." §12203(a). *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 2012 U.S. LEXIS 578, 14-15 (U.S. Jan. 11, 2012).

The court examines Title VII retaliation claims using the McDonnell Douglas burden shifting analysis. See *Flait v. North Am. Watch Corp.*, 3 Cal. App. 4th 467, 476, 4 Cal. Rptr. 2d 522 (1992).

To establish a prima facie claim, Velasco must show: (1) involvement in protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003).

Velasco satisfied these three elements. First, Velasco engaged in protected activity; he filed a charge of discrimination with the Idaho Human Rights Commission. Second, Velasco suffered an adverse employment action when Defendants reduced his hours and job duties, constructively discharging him from employment. Third, the fact that Defendants reduced Velasco's hours and duties just days after receiving the charge from the Idaho Human Rights Commission supports an inference of retaliation sufficient to satisfy the causation element. See *Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (recognizing that causation may be inferred from timing alone where an adverse employment action follows on the heels of protected activity); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996). *See Reszetylo v. Morgan Stanley Dean Witter & Co.,* 84 Fed. Appx. 822, 824-825 (9th Cir. Cal. 2003). Velasco can therefore establish a prima facia case.

Under the McDonnell Douglas burden shifting analysis, Defendant then has the burden of proving it took the adverse employment action for a legitimate nondiscriminatory reason. Defendants allege that business necessity required the reduction of Velasco's hours and job duties. Defendants will not be able to support this contention at trial.

To establish his claim for constructive discharge, Velasco must show that given the totality of the circumstances, a reasonable person in his position would have felt forced to quit because of the intolerable and discriminatory working conditions. To establish constructive discharge, an employee must demonstrate that a working environment is "so intolerable and discriminatory as to

justify a reasonable employee's decision [to leave]." *Brooks v. City of San Mateo,* 229 F.3d 917, 930 (9th Cir. 2000) (*quoting Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987)). Generally, this inquiry is a question left to the trier of fact. *See Watson*, 823 F.2d at 361. Velasco simply could not pay all of his bills while working only two hours per day, so he was forced to quit and seek another job.

C. Damages under the ADA: 42 U.S.C. § 12117 and 42 U.S.C. § 1981a

42 U.S.C. § 12117 (a) (referring to 42 U.S.C. § 2000e) provides that if a violation of the ADA is found, Plaintiff is entitled to an award of front pay, back pay, and interest thereon. It also provides for other equitable relief such as reinstatement, but Plaintiff is not seeking reinstatement at this time. 42 U.S.C. § 2000e-5(g)(1). Plaintiff's expert will testify as to his front pay and back pay damages as well as interest.

42 U.S.C. § 1981a (2) provides that Velasco is entitled to an award of compensatory and punitive damages in an amount not to exceed $50,000.00. The statute provides:

> (2) Disability. In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 USCS § 2000e-5 or 2000e-16] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)). . . .the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 USCS § 2000e-5(g)], from the respondent.
> (3) Limitations. The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party--
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

Plaintiff is also entitled to attorney fees, expert witness fees, and costs incurred, pursuant to one or more of the following: 42 U.S.C. § 1988, 42 U.S.C. § 12205, and Idaho Code § 12-120.

D. Harassment and Retaliation under the Idaho Human Rights Act

Idaho Code § 67-5909 provides that "[i]t shall be prohibited . . . .(1)for an employer to . . . discriminate against an individual with respect to compensation, or the other terms, conditions or privileges of employment." In compliance with this Idaho Human Rights Act, Velasco filed a charge of discrimination with the Idaho Human Rights Commission. He was subjected to unlawful retaliation because of this charge. The Idaho Human Rights Commission found probable cause for unlawful retaliation.

Velasco complied with the procedure for filing a claim in District Court under the act. *See* Idaho Code § 67-5909(2) which states, "A complaint must be filed with the commission as a condition precedent to litigation. A complainant may file a civil action in district court within ninety (90) days of issuance of the notice of administrative dismissal pursuant to section 67-5907(6), Idaho Code." In addition to the damages set forth in the ADA, Velasco is entitled to the relief provided by the Idaho Human Rights Act. Specifically, Velasco is entitled to the relief set forth in Idaho Code § 67-5909(3), which provides:

(3) In a civil action filed by the commission or filed directly by the person alleging unlawful discrimination, if the court finds that unlawful discrimination has occurred, its judgment shall specify an appropriate remedy or remedies therefor. Such remedies may include, but are not limited to:

(a) An order to cease and desist from the unlawful practice specified in the order;

(b) An order to employ, reinstate, promote or grant other employment benefits to a victim of unlawful employment discrimination;

(c) An order for actual damages including lost wages and benefits, provided that such back pay liability shall not accrue from a date more than two (2) years prior to the filing of the complaint with the commission or the district court, whichever occurs first;

(d) An order to accept or reinstate such a person in a union;

(e) An order for punitive damages, not to exceed one thousand dollars ($1,000) for each willful violation of this chapter.

## IV. CONCLUSION

Plaintiff will establish that he is entitled to damages for workplace harassment and retaliation under both the ADA and the Idaho Human Rights Act. Defendant will not be able to establish the defense that Velasco's hours and job duties were reduced because of a non-discriminatory reason.

DATED this 25th day of January, 2012.

THOMSEN STEPHENS LAW OFFICES, PLLC

By: __/s/__________________________________
Jacob S. Wessel, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on 25th day of January , 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

PAUL C ECHOHAWK ESQ
ECHOHAWK LAW OFFICES
505 PERSHING AVENUE
P O BOX 6119
POCATELLO ID 83205

THOMSEN STEPHENS LAW OFFICES, PLLC

By: __/s/__________________________________
Jacob S. Wessel, Esq.

JSW
7770\011 Plaintiff's trial memo