UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIO VELASCO,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>BROADWAY ARCTIC CIRCLE, LLC; and HITT ARCTIC CIRCLE,<br><br>　　　　　　Defendants. | Case No. 4:11-cv-00102-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　The Court has before it Defendants' Renewed Motion for Judgment as a Matter of Law or New Trial (Dkt. 53), and the parties' briefs on front and back pay.

## ANALYSIS

**1.　　Discrimination Claim**

　　　　At the close of Velasco's case during the trial in this matter, Defendants moved for judgment as a matter of law pursuant to Rule 50(a) on Velasco's discrimination claims and retaliation claims.[1] The Court allowed the jury to consider the claims, and the jury rendered a verdict in favor of Velasco on all claims. Defendants now renew their motion on the discrimination claims.

　　　　Under Rule 50(b), when a court does not grant a motion for judgment as a matter

---

[1] There were four claims – a retaliation and a discrimination claim under the ADA, and a retaliation and a discrimination claim under the IHRA.

**MEMORANDUM DECISION AND ORDER - 1**

of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. Fed. R. Civ. P. 50(b). The party may then file a renewed motion for judgment as a matter of law and may include a request for a new trial. *Id*. The Court may resolve the issue in one of three ways: (1) allow judgment on the verdict if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law. *Id*. "Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (Internal citation omitted). Thus, "[a] motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor." *Id*. (Internal citation omitted). Evidence must be viewed in the light most favorable to the nonmoving party, with all reasonable inferences drawn in favor of that party. *Id*. at 1205-06.

Under the ADA,[2] an employer may not discriminate against an employee who has a disability by subjecting him to harassment because of his disability. As outlined in the Court's jury instructions, to prove his discrimination claim Velasco was required to prove each of the following elements by a preponderance of the evidence: (1) the plaintiff is disabled as that term is defined in the ADA; (2) he was subjected to un-welcomed harassment in the workplace; (3) this harassment was based on his disability; (4) the

---

[2] As explained to the jury, the elements for the IHRA discrimination claim are the same as the elements of the ADA discrimination claim. Therefore, the two claims survive or fail together, and the Court will analyze them under the ADA standard..

**MEMORANDUM DECISION AND ORDER - 2**

harassment was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive or hostile work environment; (5) the plaintiff perceived the working environment to be abusive or hostile; (6) a reasonable person in plaintiffs circumstances would consider the work environment to be abusive or hostile; and (7) defendants' owner knew or should have known of this harassment and failed to take prompt, remedial action.

Defendants contend that there was insufficient evidence that Velasco was subjected to un-welcomed harassment in the workplace based on his disability, or that the harassment was sufficiently severe or pervasive to alter the conditions of Velasco's employment and create an abusive or hostile work environment. The Court agrees with the second argument.

The Supreme Court has explained that in determining whether an environment is sufficiently hostile or abusive, a district court must look at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or just a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (Internal citation omitted). Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Id.*[3] These standards

---

[3] Although *Faragher* was a Title VII case, the traditional framework for analyzing Title VII cases applies in ADA cases. *Snead v. Metro. Property & Cas. Ins. Co.*, 237 F.3d 1080, 1093

**MEMORANDUM DECISION AND ORDER - 3**

properly filter out complaints "attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (Internal citation omitted). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment. . . ." *Id.* A derogatory nickname and occasional insulting comments may constitute only simple teasing and isolated incidents not sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive work environment. *Meirhofer v. Smith's Food and Drug Centers, Inc.*, 2011 WL 642664 (9th Cir. 2011).[4]

Velasco asserts that the evidence at trial showed that harassment toward him permeated his employment and that it was ongoing from June 2008 until his employment ended. However, the focus of the discrimination claim related to only two or three instances: (1) the statement asking Velasco how long it was going to take him to get something out to the customers; (2) the related incident where Mr. Bell made faces at Velasco after the statement about getting something out to the customers; and (3) the statement that all Velasco was doing with the newspaper was looking at the pictures. Evidence of some additional general behavior was also presented at trial, but nothing

---

(9th Cir. 2001).

[4] *Meirhofer* is an unpublished opinion issued after 2007. Therefore, pursuant to Ninth circuit Rule 36-3, it is not precedent, but may be cited to the Ninth Circuit. Here, the Court does not cite it as precedent, and the Court recognizes that the facts of the case are not set forth in the opinion. However, the Court notes that it is a very recent decision which gives some general guidance about how the Ninth Circuit addresses hostile work environment claims under the ADA.

**MEMORANDUM DECISION AND ORDER - 4**

specific. These general allegations included testimony that Velasco was treated differently, that he did not feel like a member of the team, that he wasn't treated right, that his manager got upset with him especially during busy lunch hours, that Mr. Bell and Ms. Mata made comments that Velasco was "more or less incompetent. . . or . . . stupid," and that Mr. Bell treated Velasco like a "slave." Additionally, one witness testified that at the end of the comment about Velasco only looking at the pictures in the newspaper, Mr. Bell also called Velasco a "retard." However, no other witnesses testified to this statement.

Under these circumstances, the Court will enter judgment as a matter of law in favor of Defendants on Velasco's discrimination claim. To be clear, calling Velasco a derogatory name and insinuating that he could not read were insulting. However, the remainder of the allegations, even if taken as true, are so general in nature that they don't establish the existence of a hostile environment. Taken as a whole, these statements and gestures amount to the sort of simple teasing and ordinary tribulations of the workplace the Ninth Circuit alluded to in *Meirhofer.* They fall in line with the Ninth Circuit's recent suggestion that a derogatory nickname and occasional insulting comments are not sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive work environment. *Meirhofer v. Smith's Food and Drug Centers, Inc.*, 2011 WL 642664 (9th Cir. 2011).

**2.    Damages**

Having granted Defendants' motion for judgment as a matter of law on Velasco's

**MEMORANDUM DECISION AND ORDER - 5**

discrimination claims, the Court will also dismiss all damages awarded on those claims.

### A.     ADA Retaliation Claim

The Ninth Circuit recently stated that punitive and compensatory damages are not available under an ADA retaliation claim because such claims are limited to the equitable relief specified in 42 U.S.C. § 2000e-5(g)(1). *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1270 (9th Cir. 2009). Moreover, Velasco was not entitled to a jury trial on that claim, but as the Court discussed with counsel before the case was tried, that claim was submitted to the jury along with the other claims for the purpose of potentially receiving some guidance from the jury and in order not to confuse the jury.

Under 42 U.S.C. § 2000e-5(g)(1), if the Court finds that the defendant intentionally engaged in retaliation, "the court may enjoin the [defendant] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). "Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." Id.

Here, the Court finds, as the jury did, that Defendants retaliated against Velasco.

**MEMORANDUM DECISION AND ORDER - 6**

The evidence at trial indicated that David Bell responded angrily at Velasco upon hearing about Velasco's claim with the Idaho Human Rights Commission, and that he significantly reduced Velasco's job responsibilities and hours in retaliation. Velasco also testified that he could not survive on the reduced income and had to look for other work. Although Velasco later considered re-applying for his job, he did so only after he had trouble finding other work. Thus, the Court also finds, as the jury did, that Defendants constructively discharged Velasco. Under Idaho law, a constructive discharge occurs when the working conditions are so intolerable that a reasonable person in the plaintiff's position would feel compelled to resign. *Patterson v. State, Dept. Of Health & Welfare*, 256 P.3d 716, 725 (Idaho 2011). Having one's hours cut to almost nothing in retaliation for filing a claim with the Idaho Human Rights Commission fulfills this standard. An employee cannot be expected to tolerate employment that does not come close to providing him with a living wage, and it is reasonable for that employee to leave such a job for alternative employment.

Having determined that Velasco prevailed on his ADA retaliation claim, the Court must order a remedy. Under the circumstances of this case, the Court finds that reinstating Velasco, although allowed under 42 U.S.C. § 2000e-5(g)(1), is not the appropriate remedy. Accordingly, the Court will order alternative equitable relief as allowed by the statute. The Court finds that an appropriate amount of front and back pay is the best equitable remedy. The Ninth Circuit has determined that under the ADA, back pay is an equitable remedy to be awarded by the district court. Similarly, front pay in Title VII, and

**MEMORANDUM DECISION AND ORDER - 7**

thus ADA cases, is the monetary equivalent of the equitable remedy of reinstatement. *Traxler v. Multnomah Cty*, 596 F.3d 1007, 1012 (9th Cir. 2010) (Citing this point is *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001)).

     Velasco presented the Court with a reasonable calculation of front and back pay. Velasco's expert, Dr. Slaughter, presented a loss valuation report explaining the present value of Velasco's past and future loss. He gave three separate findings depending on Velasco's retirement age of either 62, 66 or 68.

     Velasco asks for an award assuming he will not retire until he is 68. However, according to the evidence at trial, as calculated by Dr. Slaughter in his report, Velasco was born in 1953. According to the Social Security Administration, someone born in 1953 can obtain full retirement benefits at age 66. Therefore, the Court finds that the proper loss calculation should assume Velasco's full retirement at age 66. Based on Dr. Slaughter's findings, Velasco is therefore entitled to $58,977.00 in equitable relief for back and front pay.

     Velasco also suggests he is entitled to an additional amount because his current job may end, but the Court is not persuaded by this argument. Accordingly, the Court will award Velasco $58,977.00 in relief for his ADA retaliation claim.

    **B.**    **IHRA Retaliation Claim**

     The Idaho Human Rights Act is somewhat less clear about the types of damages available to a plaintiff who prevails on a retaliation claim. A retaliation claim is based on Idaho Code § 67-5911, which states that "[i]t shall be unlawful for . . . any business entity

**MEMORANDUM DECISION AND ORDER - 8**

subject to regulation by this chapter to *discriminate* against any individual because he or she has opposed any practice made unlawful by this chapter or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." I.C. § 67-5911 (Italicized emphasis added). This statute appears to use the term "discriminate" where the term "retaliate" would make more sense. If that is the case, when Idaho Code § 67-5901, *et seq.* is read as a whole it appears that the same damages are available under Velasco's retaliation claim as would be available under a discrimination claim.

Such damages are outlined in Idaho Code § 67-5908, which indicates that in a civil action filed by a person alleging unlawful discrimination, if the court finds that unlawful discrimination has occurred, the following remedies may include, but are not limited to: "(a) An order to cease and desist from the unlawful practice specified in the order; (b) An order to employ, reinstate, promote or grant other employment benefits to a victim of unlawful employment discrimination; (c) An order for actual damages including lost wages and benefits, provided that such back pay liability shall not accrue from a date more than two (2) years prior to the filing of the complaint with the commission or the district court, whichever occurs first; (d) An order to accept or reinstate such a person in a union; (e) An order for punitive damages, not to exceed one thousand dollars ($1,000) for each willful violation of this chapter." I.C. § 67-5908. These damages appear similar to the damages available under the ADA retaliation claim, except that an order for punitive damages, not to exceed one thousand dollars for each willful violation, is allowed.

**MEMORANDUM DECISION AND ORDER - 9**

Under these circumstances, the Court will not award additional damages under the IHRA retaliation claim. First, to do so would permit double counting for front and back pay. Therefore, the Court will not award Velasco another $58,977.00 for equitable relief for front and back pay for the IHRA claim. Second, as explained above, the Court is not altogether convinced that Idaho Code § 67-5901, *et seq* applies to retaliation claims. Therefore, the Court will not award punitive damages either. It is just as likely that the IHRA, like the ADA, does not allow for punitive damages on a retaliation claim.

Moreover, the Court notes that even if punitive damages are allowed under the IHRA statute, an award of punitive damages would not be warranted under the facts of this case. The Idaho Supreme Court has indicated that punitive damages are a peculiarity in the law of damages. *Curtis v. Firth*, 850 P.2d 749, 759 (Idaho 1993) (Internal citation omitted). The purpose of punitive damages is to express the outrage of society at certain actions of the defendant, not to compensate the plaintiff. *Id*. They are meant to punish, and "[i]n Idaho the punishment rationale is disfavored." *Id*. The Idaho Supreme Court has reasoned that "[p]unishment per se should be left to the criminal law." *Id*. (Internal citation omitted). "Even for deterrence, punitive damages are not a favorite of the law [in Idaho], and the power to give such damages should be exercised with caution and within the narrowest limits." *Linscott v. Rainier Nat. Life Ins. Co.*, 606 P.2d 958, 961 (Idaho 1980). They are awarded "only in the face of conduct on the part of the defendant which society considers so reprehensible as to require an extraordinary remedy," *Id*. There must be evidence which "shows clearly that the action of the wrongdoer is wanton, malicious,

**MEMORANDUM DECISION AND ORDER - 10**

or gross and outrageous, or the facts are such as to imply malice and oppression. . . ." *Id*. (Internal citation omitted).

As explained above, the evidence at trial indicated that David Bell responded angrily at Velasco upon hearing about Velasco's claim with the Idaho Human Rights Commission, and that Bell significantly reduced Velasco's job responsibilities and hours in retaliation. This evidence was enough for Velasco to prevail on his retaliation claim. However, it does not rise to the level of outrageous conduct which results in punitive damages. Therefore, the Court will limit Velasco's total award to $58,977.00.

## ORDER

**IT IS ORDERED:**

1. Defendants' Renewed Motion for Judgment as a Matter of Law or New Trial (Dkt. 53) is **GRANTED in part** and **DENIED in part**. The Court will grant judgment for Defendants as a matter of law on Velasco's discrimination claims.

2. The Court will vacate the judgment amount awarded by the jury and order Defendants to pay Velasco and award of $58,977.00 on the retaliation claims.



DATED: **June 28, 2012**

Honorable B. Lynn Winmill

**MEMORANDUM DECISION AND ORDER - 11**

Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 12**