UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIO VELASCO,<br><br>     Plaintiff,<br><br>  v.<br><br>BROADWAY ARCTIC CIRCLE, LLC;<br>and HITT ARCTIC CIRCLE, LLC,<br><br>    Defendants. | Case No. 4:11-cv-00102-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

The Court has before it Plaintiff's Petition for Attorney Fees and Costs (Dkt. 57). For the reasons explained below the Court will grant the motion in part and deny the motion in part.

**BACKGROUND**

Velasco's Complaint alleged discrimination and retaliation under both the Americans with Disabilities Act ("ADA") and the Idaho Human Rights Act ("IHRA"). (Dkt. 1). The jury returned a verdict in favor of Velasco on all claims. (Dkt. 49). Following the jury verdict, Arctic Circle renewed its motion for Judgment as a Matter of Law. (Dkt. 53). The Court granted the motion as to the discrimination claims. (Dkt. 55).

With regard to the retaliation claims, the Court reconfirmed that Velasco was not entitled to a jury trial, but as the Court discussed with counsel before the case was tried,

those claims were submitted to the jury for guidance and not to confuse the jury. (Dkt. 55 at 6). Ultimately, the Court agreed with the jury's finding that Arctic Circle retaliated against, and constructively discharged, Velasco. (Dkt. 55 at 6-7). The evidence at trial indicated that Article Circle significantly reduced Velasco's job responsibilities and hours in response to Velasco filing a discrimination claim with the Idaho Human Rights Commission. (Dkt. 55 at 6-7). Accordingly, the Court awarded Velasco $58,977 in equitable relief for back and front pay. (Dkt. 56)

Velasco then filed his motion for attorney's fees in the amount of $60,847.50, and for costs in the amount of $4,182.55. (Dkt. 57 & 58). Arctic Circle filed a response arguing that the fees and costs should be limited to no more than $20,000. (Dkt. 62 at 7).

## LEGAL STANDARD

In general, the American Rule states that each party to a lawsuit bears its own attorney fees unless Congress has statutorily provided otherwise.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The ADA is one area where Congress has statutorily allowed courts to award reasonable attorney's fees. *Jankey v. Poop Deck*, 537 F.3d 1122, 1129 (9th Cir. 2008); 42 U.S.C. § 12205. The purpose for allowing attorney's fees in civil rights actions is to ensure that plaintiffs have "effective access to the judicial process." *Hensley*, 461 U.S. at 429. "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Jankey*, 537 F.3d at 1131. Therefore, in most instances a prevailing party should recover attorney's fees. *Hensley*,

461 U.S. at 429.

## ANALYSIS

### 1. ATTORNEY'S FEES

To award attorneys fees in an ADA case, the Court must make two separate determinations. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118-1119 (9th Cir. 2000). First, the Court must find that the plaintiff was the prevailing party. *Id*. Second, the Court must decide what is a reasonable amount of fees. *Id*.

#### A. Prevailing Party

A plaintiff is considered the prevailing party "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Fischer*, 214 F.3d at 1118. In other words, when a plaintiff has the right to enforce a judgment, consent decree, or settlement against a defendant, a material alteration of the legal relationship has occurred. *Id*. This alteration of the legal relationship results from plaintiff's right to "force the defendant to do something he would not otherwise have to do." *Id*.

Furthermore, a plaintiff is considered a prevailing party even if he did not prevail on every claim. *Stivers v. Pierce*, 71 F.3d 732, 751 (9th Cir. 1995). A significant victory on any one claim, affording some relief sought, is enough to find that the plaintiff is a prevailing party. *Id*; *Hensley*, 461 U.S. at 433.

In this case, Arctic Circle does not dispute that Velasco was the prevailing party. (Dkt. 62 at 3). Velasco was awarded a judgment in the amount of $58,977 in equitable

relief for front and back pay on his retaliation claims. (Dkt. 56). The Judgment therefore

materially altered the legal relationship between the parties. *Fischer*, 214 F.3d at 1118.

Accordingly, the Court finds that Velasco was a prevailing party in this case.

   **B.     Reasonable Fee**

   The Court must next determine what amount of attorney's fees is reasonable. *Id*. at

1119. In determining the fee award, a district court must consider whether the rate

charged and whether the hours expended by the attorneys were reasonable. *Hensley*, 461

U.S. at 433. The Ninth Circuit has adopted twelve factors known as the *Kerr* factors to

aid a district court in this decision. *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th

Cir. 1975); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1213 (9th Cir. 1986). They

include: "(1) the time and labor required, (2) the novelty and difficulty of the questions

involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of

other employment by the attorney due to acceptance of the case, (5) the customary fee, (6)

whether the fee is fixed or contingent, (7) time limitations imposed by the client or the

circumstances, (8) the amount involved and the results obtained, (9) the experience,

reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the

nature and length of the professional relationship with the client, and (12) awards in

similar cases." *Id*.

   Once the district court has determined that both the hourly rate and hours

expended are reasonable, it should take these two numbers and multiply them to establish

an initial estimate of the value of the attorney's services. *Hensley*, 461 U.S. at 433.

**MEMORANDUM DECISION AND ORDER - 4**

In this case, Velasco was represented by Thomsen Stephens Law Offices. The law office billed Velasco 292.4 hours for the work of four attorneys – Jacob Wessel, James Holman, Alan Stephens and Jason Wood. (Dkt. 59). The hours were billed at different rates depending on which attorney did the work. (Dkt. 59 at 2). The chart below depicts the hourly rates and total hours expended by each attorney. (Dkt. 59 at 2).

| ATTORNEY | HOURS BILLED | HOURLY RATE | TOTAL |
|---|---|---|---|
| Jacob Wessel | 244.9 | $200 | $48,980 |
| James Holman | 42.2 | $250 | $10,550 |
| Alan Stephens | 5 | $250 | $1,250 |
| Jason Wood | .3 | $255 | $67.50 |
| Total | | | $60, 847.50 |

Velasco's attorneys also provided the Court with a nine page itemized statement detailing the services they provided to Velasco. (Dkt. 59 Ex. A). The Court has reviewed these documents and all other documents submitted by Velasco's attorneys, as well as those submitted by Arctic Circle's attorney. After viewing these documents and the case as a whole, the Court finds that the hourly rates charged by Velasco's attorneys are reasonable. The Court also finds that the majority of the hours expended by Velasco's attorneys are reasonable, with a few exceptions. However, the Court rejects Arctic Circle's argument that one of the *Kerr* factors, the one dealing with the results obtained, should reduce Velasco's award of attorney's fees. The Court will discuss these findings in detail below.

MEMORANDUM DECISION AND ORDER - 5

(1).    **Hourly Rate**.

As stated above, a district court must make a determination as to whether the hourly rate charged by an attorney is reasonable. *Hensley*, 461 U.S. at 433. In making this determination, the district court should take into consideration the *Kerr* factors. *Kerr*, 526 F.2d at 70; *Chalmers*, 796 F.2d at 1213. Of these factors, the Ninth Circuit has stated that the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation, should guide the district court in determining whether the hourly rate charged was reasonable. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). Additionally, it is the responsibility of an attorney seeking an award to submit evidence showing that the hourly rates are reasonable. *Hensley*, 461 U.S. at 433. However, it is not an abuse of discretion for a district court to rely in part on it's own knowledge and experience in determining a reasonable hourly rate. *Ingram*, 647 F.3d at 928.

In this case, Wessel was the primary attorney handling Velasco's case, with an hourly rate of $200 per hour. (Dkt. 59). Another Idaho attorney, John M. Avondet, filed an affidavit testifying to the reasonableness of Wessel's hourly rate (Dkt. 60). In the affidavit, Avondet testified that "$200 per hour is a customary and reasonable charge for attorneys with comparable experience and skill as Mr. Wessel in the geographic area where he practices." (Dkt. 60 at 2). Avondet's knowledge is based on having practiced law in the same location and for the same amount of time as Wessel. (Dkt.60 at 2). Avondet also testified that he charges $225 per hour. (Dkt. 60 at 2). Additionally, Arctic

Circle does not allege that the rates charged by Velasco's attorney's are unreasonable.

Under these circumstances, the Court finds that the $200 hourly rate charged by Wessel is reasonable. This finding is based on Avondet's affidavit and the Court's knowledge of the customary fees in the area for an attorney with Wessel's experience, expertise, and reputation.  Additionally, the Court finds that the hourly rate of the other three attorneys who worked on Velasco's case are also reasonable. Specifically, the $250 hourly rate charged by Holman and Stephens, and the $255 hourly rate charged by Wood. The Court has dealt with each of these attorneys on many occasions, and the Court is aware that they are more experienced than Wessel. Their slightly higher hourly rates reflect their experience, expertise, and reputation.

### (2).   Hours Expended.

Once a district court has determined that the hourly rate charged by an attorney is reasonable, the district court must make a determination as to whether the number of hours expended are reasonable. *Hensley*, 461 U.S. at 433. Again, the district court should consider the *Kerr* factors to aid its determination. *Kerr*, 526 F.2d at 70. Additionally, the district court should consider the responsibility of the party seeking an award of fees to submit evidence supporting the hours expended on the case. *Hensley*, 461 U.S. at 433.

 In this case, Velasco's attorneys submitted an itemized statement describing the legal services provided.(Dkt 59 Ex. A). In total, Velasco's attorneys billed 292.4 hours of legal services for a total of $60,847.50. (Dkt 59 Ex. A). Upon a thorough review of the itemized statement, the Court finds that the vast majority of the hours expended on these

services are reasonable. However, there are a few areas of concern.

First, on Febuary15, 2012, Wessel and Holman billed three hours each to travel from Idaho Falls to Pocatello to inspect the courtroom equipment. (Dkt. 59 Ex. A). While the ability to effectively use technology in the courtroom is a critical skill for an attorney, the Court is not persuaded that this is the type of activity for which their clients or Arctic Circle should pay. Such activity provides the attorneys with basic knowledge that will help them be competent attorneys for all their work in federal court.

Second, the Supreme Court has held that counsel should make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." *Hensley*, 461 U.S. at 434. Arctic Circle argues that all of the hours spent by Wood, Holman and Stephens were redundant, inefficient and unnecessary, and therefore should be excluded. (Dkt. 62 at 4). The Court understands counsel's argument, but finds that the work done by the four attorneys on this case was appropriate, and done in good faith.

The Court was made aware during trial that this was Wessel's first, or one of his first, trials. Thus, he received help and guidance from three other attorney's in his firm as he prepared the case and took it to trial. (Dkt. 59 Ex. A). It appears from the filings that Wood was the first to sit down with Wessel during a short conference near the beginning of the case, for which he billed only .3 hours. (Dkt. 59 Ex. A). Holman was the next to assist Wessel, and it appears he began a supervisory role. (Dkt. 59 Ex. A). Holman reviewed documents and discussed strategy with Wessel. (Dkt. 59 Ex. A). Holman was

also fully involved during most of the trial. (Dkt. 59 Ex. A). Stephens was the last to contribute to the case, logging 5 billable hours for traveling to Pocatello and attending trial on one morning when Holman was unable to attend. (Dkt. 59 Ex. A).

Some matters warrant more than one attorney working on the case while others do not. *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995). Having tried this case, the Court notes that although it was not one of the most complex cases in Federal Court, it also was not overly simple. The ADA and IHRA are not simple statutes, and the Court itself spent significant time preparing jury instructions and addressing other legal questions which arose during trial. Thus, it was not inappropriate for more than one attorney to represent Velasco.

Moreover, although Wood, Holman and Stephens apparently spent some time mentoring Wessel, the hours they spent on the case were minimal. In fact, had any of those three attorneys handled the case by themselves, it likely would have amounted to more in attorney's fees because of their higher billing rates. Thus, after considering the *Kerr* factors and the facts above, the Court finds that their billings are appropriate.

Accordingly, the Court will only reduce Wessel's and Holman's hours by three hours each for traveling to Pocatello to familiarize themselves with the courtroom. That reduces the fee by $1,350. Thus, the total initial calculation of fees shall be reduced to $59,497.50.

### (3).    Reasonableness in light of Result Obtained

The Court must now determine if there are any other factors which would justify

an adjustment in attorney's fees. *Hensley*, 461 U.S. at 434. Arctic Circle specifically

argues that one of the *Kerr* factors – results obtained – requires a reduction. (Dkt. 62).

 In analyzing the results obtained, the district court should ask two questions.

*Hensley*, 461 U.S. at 434. "First, did the plaintiff fail to prevail on claims that were

unrelated to the claims on which he succeeded?" *Id*. "Second, did the plaintiff achieve a

level of success that makes the hours reasonably expended a satisfactory basis for making

a fee award?" *Id*. In making these determinations, there is no precise rule or formula;

rather, it is up to the discretion of the district court to determine what is equitable. *Id*. at

436-437.

### (a)    Unrelated Claims

 With respect to unrelated claims, in general, a plaintiff cannot receive attorney's

fees resulting from unsuccessful claims if they are unrelated to plaintiff's successful

claims. *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009). However, if a

plaintiff files separate claims arising out of the same "common core of facts" or that are

based on "related legal theories," the request for attorney's fees should not be divided on

a "claim-by-claim basis." *Id*.

 In this case, Arctic Circle argues that Velasco's unsuccessful claims were

unrelated to his successful claims. (Dkt. 62 at 6). Arctic Circle reasons that the retaliation

occurred only after all the alleged discrimination, and that there was no work relative to

the discrimination claims which also needed to be performed in order to try the retaliation

claims. (Dkt. 62 at 6). Arctic Circle therefore contends that there is a factual distinction

between the claims. (Dkt. 62 at 6). The Court disagrees.

The Ninth Circuit and at least one other district court within the Ninth Circuit have essentially rebutted such an argument. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1104 (N.D. Cal. 2010). In *Odima*, the Ninth Circuit affirmed the district court's finding that plaintiff's federal discrimination claim arose from the same common core of facts as his retaliation and constructive discharge claims. *Odima*, 53 F.3d at 1499. The court reasoned that to prove the federal discrimination claim, and the state retaliation and constructive discharge claim, the plaintiff "had to present evidence of his work environment, [and] his relationship with his superiors. . . ." *Id.* Similarly, in *Campbell*, the California district court held that the plaintiff's discrimination claim was based on the same common core of facts as a retaliation claim because the plaintiff's retaliation claim was dependant upon the defendant's conduct in response to plaintiff's discrimination complaint. *Campbell*, 718 F. Supp. 2d at 1104.

These facts are similar to those in this case. For the same reasons described in *Odima* and *Campbell*, this Court finds that Velasco's discrimination claims and retaliation claims arose from the same common core of facts. Velasco's retaliation claim was dependent upon Arctic Circle's response to his discrimination claim. Furthermore, Velasco was required to put on evidence pertaining to his work environment and his relationship with his superiors for both the discrimination and retaliation claims. Thus, Velasco's discrimination claims and retaliation claims are related, and the request for

attorney's fees will not be divided on a claim to claim basis. *McCown*, 565 F.3d at 1103.

### (b)    Degree of Success

As for the degree of success, once a district court determines that the unsuccessful claims arose from the same common core of facts as the successful claim, it should consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended..." *Id*. at 1103.

In this case, Arctic Circle argues that the overall relief or degree of success obtained by Velasco was limited for several reasons. (Dkt 62). First, Arctic Circle argues that Velasco was only successful on one of his four claims. (Dkt. 62 at 3-4). Second, Arctic Circle argues that Velasco was only awarded $58,977 in damages out of the $1 million sought. (Dkt 62 at 4). Arctic Circle's arguments are without merit.

With regard to the number of successful claims, the Court finds that Velasco was successful on half of his claims. As the Court stated in its Memorandum Decision and Order, Velasco was not awarded front and back pay under his IHRA's retaliation claim only because it was awarded to him under his ADA retaliation claim, and the Court could not allow double counting. (Dkt 55). That does not mean he was unsuccessful on that claim though.

The Court also disagrees with Arctic Circle's claim that Velasco sought $1 million in damages. The Court assumes this number comes from Velasco's original Complaint, which requested $500,000 in punitive damages each for the discrimination claim and the retaliation claim. (Dkt 1 at 5, 7). However, Velasco's Complaint contained requests for

"punitive damages in the amount of $500,000, or as otherwise fixed by a jury and available under applicable law." (Dkt 1 at 5, 7). Velasco acknowledged that the ADA limited the amount of compensatory and punitive damages he could receive on the discrimination claims to $50,000, and that no punitive damages were available under the retaliation claim. (Dkt. 25 at 8). Under the IHRA, Velasco's request for punitive damages was limited to $1,000 for each violation. (Dkt. 55 at 9). Thus, the Court finds that Arctic Circle was incorrect in claiming Velasco actually sought $1 million in damages.

The more appropriate estimation of the amount Velasco sought would be somewhere in the neighborhood of $147,350. This approximation is based upon Velasco's request for front and back pay totaling $97,350 (Dkt. 52 at 4), plus Velasco's recognition that he could not ask for more than $50,000 in compensatory and punitive damages. (Dkt. 25 at 8). Therefore, Velasco's award of $58,977 is approximately forty percent of what he sought. The Court will use these figures in its analysis of Velasco's degree of success.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. *Hensley*, 461 U.S. at 435. However, if the plaintiff's overall success is limited, the district court may reduce the award of attorney's fees. *Id*. at 436. In making a determination on the plaintiff's success, the district court may consider, but is not limited to, several of the following factors. First, the amount of claims the plaintiff prevailed on compared to the amount of claims that were dismissed. *McCown*, 565 F.3d at 1104. Next, the amount of damages the plaintiff was awarded compared to the amount of damages he

sought. *Id*. Third, the amount of damages the plaintiff was awarded compared to the amount of attorney's fees sought. *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir. 1994). Lastly, whether or not the suit conferred a benefit on the public. *McCown*, 565 F.3d at 1105.

Under the first factor, when the amount of unsuccessful claims heavily outnumber the successful claims, the plaintiff's degree of success is limited. *McCown*, 565 F.3d at 1103. In *McCown*, the Ninth Circuit remanded the case in part, instructing the district court to consider that losing eight out of nine claims was evidence of limited success. *Id*. at 1105. In this case, Velasco succeeded on half his claims, and the Court finds that this factor does not cut either way.

The second factor supports a finding that a plaintiff experienced limited success when the amount the plaintiff sought is significantly more than the amount of damages he was ultimately awarded. *McCown*, 565 F.3d at 1104. In *McCown*, the plaintiff reached a settlement for $20,000 in damages, which was approximately one-fourth of the $75,000 pled in his complaint and one-tenth of the $251,000 he requested in settlement, inclusive of attorneys's fees and costs. *Id*. at 1104. The Ninth Circuit remanded the case to the district court stating that the plaintiff's "victory clearly fell far short of his goal." *Id*. at 1104-1105. In this case, Velasco's award of damages was roughly forty percent of the amount he sought during trial. (Dkt. 58). Again, this factor does not cut either way.

The third factor supports a finding that plaintiff experienced limited success when the amount of attorney's fees requested greatly outweigh the amount of damages

awarded. *McGinnis*, 51 F.3d at 810. In *McGinnis*, the plaintiff was awarded approximately $148,000 in attorney's fees, while his actual damages was only $34,000. *Id*. The Ninth Circuit stated that "no reasonable person would pay lawyers $148,000 to win $34,000. *Id*. The case was remanded so that the district court could "reduce the attorneys fees award so that it is commensurate with the extent of the plaintiff's success." *Id.* In this case, Velasco was awarded 58,977. in damages and requested attorney's fees in the amount of $60, 847.50. (Dkt. 58). The amount of damages compared to the requested attorney's fees is virtually equal. Yet another factor that does not cut either way.

The last factor supports a finding that Plaintiff achieved a high level of success when the suit confers a benefit on the public. *McCown*, 565 F.3d at 1105. Additionally, when a public benefit is found, an "award of attorney's fees that is disproportionate to the actual damages may be appropriate." *Id*. In this case, the Court finds that Velasco's suit did, in fact, benefit the public. Velasco's victory acts as a deterrent to other employers who might retaliate or punish its employees who exercise their rights under the law. Thus, this fact cuts in favor of fully compensating Velasco's attorneys. *Hensley*, 461 U.S. at 435.

Therefore, considering all the factors which bear on Velasco's degree of success, and looking at the case as a whole, the Court finds that no additional adjustments to the attorney's fee award is warranted. Thus, the Court finds that Velasco shall be awarded attorney's fees in the amount of $59,497.50.

## 2.    COSTS

Velasco also requests costs in the amount of $4,182.55. (Dkt. 57 & 58). Under the American Rule, a litigant must bear his expenses associated with litigation "unless a statute or private agreement provides otherwise." *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 579 (9th Cir. 2010). In this case, there are two statutes justifying a cost award. The first is embodied in 28 U.S.C.A. § 1920, which deals with taxable costs. *Id.* The second is found in 42 U.S.C.A § 12205, which includes non-taxable costs. *Id.* at 579-580*; Lovell v. Chandler,* 303 F.3d 1039, 1058 (9th Cir. 2002).

### A.    Taxable Costs

Pursuant to 28 U.S.C.A. § 1920, a court may "tax as costs" certain expenses including fees of the clerk and marshal, certain transcript fees, certain printing and witnesses fees, the costs of copies, docketing fees, and compensation of court appointed experts and interpreters. *Grove*, 606 F.3d at 579. These costs are known as "taxable costs," and are recoverable by the prevailing party. *Id*. In some instances, these costs are limited by statute. 28 U.S.C.A § 1821("A witness shall be paid an attendance fee of $40 per day for each day's attendance.")

In this case, Velasco submitted a Bill of Costs under 28 U.S.C.A 1920, itemizing his taxable costs in the amount $1,657.38. (Dkt. 61). Arctic Circle does not dispute these costs. However, the Court has reduced this request to $1,634.88 based on the effective milage rate for the year 2012 being $0.51 rather than the $0.55 submitted by Velasco. Thus, Velasco will be reimbursed $1,634.88 in taxable costs. (Dkt. 64).

### B.    Non-Taxable Costs

In addition to taxable costs, the Ninth Circuit has consistently allowed a prevailing plaintiff to recover non-taxable costs where a statute authorizes an award of reasonable attorney's fees to a prevailing party. *Grove*, 606 F.3d at 580. The term "reasonable attorney's fees" has been interpreted to include certain litigation expenses including travel, courier and copying costs. *Id*. However, in general, these costs include those normally charged to a fee paying client. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n. 7 (9th Cir. 1986). Non-taxable costs, or out of pocket litigation expenses, "are reimbursable as part of the attorney's fee, distinct from the costs already awarded to plaintiffs under 28 U.S.C. § 1920." *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990). However, a district court is required to determine if such costs are reasonable, and whether "it is the prevailing practice in the given community for lawyer's to bill those costs separate from their hourly rates." *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012).

In this case, Velasco's claim under the ADA contains a reasonable attorney's fee provision. 42 U.S.C.A. § 12205. Under 42 U.S.C.A. § 12205, a prevailing party may be awarded a "reasonable attorney's fees, including litigation expenses, and costs." 42 U.S.C.A. § 12205. In the ADA's preamble, it explains that "litigation expenses include items such as expert witness fees, travel expenses, etc." *Lovell v. Chandler,* 303 F.3d 1039, 1058 (9th Cir. 2002). Thus, a prevailing party may be reimbursed specifically for these types of costs as well as any other general costs which a lawyer bills the client separate from an hourly rate. *Id; Secalt*, 668 F.3d at 690. Accordingly, the Court will

award Velasco his non-taxable costs.

The Court will award Velasco a total of $3,392.21 in non-taxable costs. Although Velasco's Memorandum in Support of his Petition for Fees and Costs suggests he should receive more, there appears to be a typo in the brief. Moreover, some of the requested costs are unreasonable. The Court will explain how it reached $3,392.21 below.

First, Velasco's attorneys claim to have incurred office expenses totaling "$5,182.55 for things such as telephone conference calls ($504.85), witness fees and trial expenses ($3,677.70)." (Dkt. 58 at 7-8.)  Yet, these two sub-values equal $4,182.55, not $5,182.5. The Court will assume there was a typo in the brief. (Dkt. 58 at 7-8). Furthermore, Velasco submitted an itemized list of expenses and advances to support a request for $4,182.55 in costs. (Dkt. 59 Ex. B). The list includes expenses totaling $504.85, and advances totaling 5,335.08. (Dkt. 59 Ex.  B). However, the advances include the $1,657.38 in taxable cost already awarded under 28 U.S.C.A 1920. (Dkt. 59 Ex. B & Dkt 64). Subtracting the taxable costs from the advances and expenses equals $4,182.55. Accordingly, the starting point for non-taxable costs will be $4,182.55, not $5,182.55.[1]

Second, the Court finds that the mileage to and from Pocatello for the

---

[1] Most of those costs were listed separately as taxable costs, and were easy to subtract. However, the Court notes that the following witness fees were listed by Velasco for Dr. Slaughter and Dr. Johnson: (1) Expert witness fee – check to Richard A. Slaughter Phd = $820.00; (2) Expert fee – check to Teresa K. Johnson, MD for deposition and records release = $400.00. Only a portion of these claims were already claimed as taxable costs: (1) $40.00 for Slaughter; and (2) $95.50 for Johnson. Thus, those amounts needed some additional math to reach the total non-taxable costs requested by Velasco.

demonstration of the courtroom audio and video is unreasonable. (Dkt. 59 Ex. B). As already explained in detail under the attorney's fees analysis above, time spent on learning the court audio and video systems is not the type of activity for which clients should pay. Therefore, Velasco cannot recover the $58.83 worth of costs associated with that activity.

Third, the Court finds that Attorney Holman's mileage to and from Pocatello on March 8, 2012, is excessive. (Dkt. 59 Ex. B). Holman's co-counsel, Wessel, drove to the courthouse on the same day, from the same location, and they could have driven together. Thus, the Court will subtract $58.28 from the costs associated with Holman's mileage.

Fourth, the Court subtracts Wessel's and Holman's costs for meals during trial. (Dkt. 59 Ex. B). The Court finds that this is not a cost which would normally be charged to a fee paying client.

Finally, the Court will not allow the total amount claimed for Dr. Slaughter. According to the cost bill, on September 9, 2011, Velasco's attorneys paid Slaughter $820.00, which is documented as a witness fee. (Dkt. 59 Ex. B). That fee shall be awarded, minus the $40.00 already awarded as a taxable cost as noted above.

However, on April 2, 2012, Velasco's attorneys also paid Dr. Slaughter an additional $1,271.95 for "trial, travel, etc." (Dkt. 59 Ex. B). The Court cannot allow costs for "etc." instead, the Court will find that it is reasonable to assume that at least half of the $1,271.95 is attributed to the trial and travel, above and beyond what Slaughter already received under 28 U.S.C.A § 1920. Thus, the Court will award as costs half of the

$1,271.95.

In sum, the Court will subtract the following from the initial $4,182.55 requested by Velasco: (1) $58.83 for mileage to and from Pocatello for demo of court audio and video; (2) 58.28 for Holman's mileage to and from Pocatello when he could have driven with Wessel; (3) 17.69 for Wessel's meals during trial; (4) $19.56 for Holman's meals during trial; and (5) $635.98 for half of Dr. Slaughter's expert witness fee. Thus, the total in non-taxable costs equals $3,392.21, which are costs the Court finds are normally charged to fee paying clients in the community where Velasco's attorneys practice.

## CONCLUSION

The Court finds that Velasco is entitled to attorney's fees in the amount of $59,497.50, and costs in the amount of $3,392.21, for a total of $62,899.71.

## ORDER

**IT IS ORDERED:**

1.    Velasco's Petition for Attorney's Fees and Costs (Dkt. 57) is **GRANTED in part** and **DENIED in part** as described above. Defendant shall pay Plaintiff $62,899.71 in attorney's fees and costs.



DATED:  **November 26, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge